PEOPLE v. TISI

1. SEARCHES AND SEIZURES—PLAIN VIEW—OFFICERS.
    Objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.

2. SEARCHES AND SEIZURES—REASONABLENESS—OFFICERS.
    The reasonableness of any search or seizure must be determined as of the time of the search or seizure; and, in the determi-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Searches and Seizures § 12.
[2] 47 Am Jur, Searches and Seizures § 52 et seq.
[3] 47 Am Jur, Searches and Seizures §§ 12, 18, 52.

nation of reasonableness, consideration may be given to the information possessed by the officer.

3. SEARCHES AND SEIZURES—PLAIN VIEW—AUTOMOBILES—OFFICERS —EVIDENCE.

Seizure of a knife enclosed in a sheath was fully justified under the plain view doctrine where a police officer went to defendant's home, arrested him for a murder which had been committed by stabbing, looked through the windshield of defendant's automobile parked in the driveway of defendant's home, saw an object on the car floor that appeared to him to be a knife handle, opened the car door and found a knife enclosed in a sheath as the officer was lawfully on the premises and his visual examination of the automobile was definitely called for in line with his duties as a police officer and led to the discovery of incriminating evidence.

Appeal from Court of Appeals, Division 2, Fitzgerald, P. J., and R. B. Burns and Bronson, JJ., affirming Macomb, Howard R. Carroll, J. Submitted October 6, 1970. (No. 2 October Term 1970, Docket No. 52,414.) Decided November 12, 1970.

16 Mich App 316 affirmed.

Lloyd Ernest Tisi was convicted of murder in the second degree. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Don L. Milbourn,* Assistant Prosecuting Attorney, for the people.

*Loren E. Bodem,* for defendant on appeal.

ADAMS, J.

I

On the evening of April 19, 1967, James Phares left his home in Warren, Michigan, to go to work.

At about 7 o'clock the following morning when he returned, he found his wife, Judy Ann Phares, lying in a pool of blood on the kitchen floor. She was dead of multiple stab wounds.

An immediate investigation was begun by the police. Detective John Spence observed the body of Judy Ann Phares, noted she had been stabbed to death, and determined that the murder weapon was probably a large type knife. Arnold Skalski, the next door neighbor, was questioned at about 1 p.m. Since he was a deaf-mute, an interpreter first had to be located. He told the police that when he came home from working the morning of April 20, as he was turning into his driveway, he saw a white Plymouth or Dodge pull into the Phares' driveway. The car had extensive damage to the right rear quarter panel. The time was approximately 3:15 a.m. A man got out of the car and went into the Phares' home. Mr. Skalski had seen the man and the car at the Phares' home the previous Sunday.

James Phares told the police that Lloyd Tisi had been at his home the previous Sunday and that he owned a white or cream-colored Plymouth car with a damaged right rear quarter panel.

Detective Spence was instructed by his superior officer to arrest Lloyd Tisi for murder. He went to Tisi's home in midafternoon with five other police officers. The police first questioned Tisi's neighbors and determined that he owned a light colored Plymouth or Dodge automobile with extensive damage to the right rear side. Detective Spence then knocked on Tisi's door. It was opened by a man who identified himself as being Lloyd Tisi. He admitted the officers. Detective Spence informed him of his constitutional rights and inquired if he understood his rights. Tisi said he did. He was asked what kind of an automobile he owned and if

it had damage to the right rear side. He stated he owned a 1965 Plymouth with damage to the right rear. He was asked if anyone other than himself had used the car from 8 a.m. on Wednesday, the 19th, to 7 a.m. on Thursday, the 20th. When he answered that nobody had used the car, he was placed under arrest for murder.

While defendant was dressing to go to the police station, Detective Spence went outside. Mrs. Tisi arrived home in an automobile which she parked in the driveway. Upon being told by Detective Spence that her husband was under arrest, she ran into the house.

Detective Spence made a visual inspection of the car. He observed that it was damaged on the right rear side. He looked through the left-hand side of the windshield and saw an object on the car floor that appeared to him to be a knife handle. He opened the car door and found a knife enclosed in a sheath. Part of the handle was what he had seen. He removed the knife and sheath from under the seat.

Subsequent examination by the State Police Crime Laboratory established that the knife was stained with blood of the same type as Judy Ann Phares. The sheath contained fibers of material that matched those of the garment worn by her at the time of her death. The knife cuts upon her body were of the same shape as the blade of the knife.

At defendant's preliminary examination, the knife was offered in evidence. Motion to suppress was made on the ground that there had been no probable cause for arrest and that the search was unreasonable. The motion was denied.

Prior to trial, the circuit court denied a motion to suppress the knife and sheath as evidence. At the trial, the motion was renewed. After a special

record had been made of the proposed testimony, the court again ruled the knife and sheath admissible. The jury returned a verdict against defendant of guilty of second-degree murder. The Court of Appeals affirmed the decision of the trial court. (16 Mich App 316.)   We granted leave to appeal. (382 Mich 782.)

## II

Were the knife and sheath lawfully seized from defendant's automobile at the time of his arrest?

## III

Defendant asserts that the search of his automobile and the seizure of the knife and sheath were beyond the permissible scope of a search incident to an arrest. *Preston v. United States* (1964), 376 US 364 (84 S Ct 881, 11 L Ed 2d 777); *Chimel v. California* (1969), 395 US 752 (89 S Ct 2034, 23 L Ed 2d 685). *Preston* and *Chimel* are not in point. Justification for the seizure in this case is not to be tested by the reasonableness of its relationship to a prior valid arrest. *People v. Kuntze* (1963), 371 Mich 419.

In the recent case of *Harris v. United States* (1968), 390 US 234 (88 S Ct 992, 19 L Ed 2d 1067), the Court said (p 236):

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."[1]

---

[1] The Court of Appeals, 5th Circuit, has gone one step beyond the plain view doctrine as to the extent of permissible inspection of a motor vehicle by a police officer. In *United States v. Johnson* (1969), 413 F2d 1396, a three-judge panel in the Court of Appeals, 5th Circuit, decided that a Federal officer's inspection of a truck parked in the defendant's yard for the purpose of checking the serial num-

In the case of *People* v. *Kuntze, supra,* this Court observed:

"Trooper Righter's first observation of the deer leg protruding from underneath the front seat of defendants' car was not a search as that term normally is defined in search and seizure cases." (P 425.)

"* * * Trooper Righter was entitled to observe by 'exercise of his own senses' whatever thereby was disclosed." (P 427.)

The reasonableness of any search or seizure must be determined as of the time of the search or seizure.[2] In the determination of reasonableness, consideration may be given to the information possessed by the officer. *People* v. *Harper* (1962), 365 Mich 494. The information possessed by Detective Spence has been detailed. His testimony under cross-exami-

---

bers was not a search, but if a search, then it was a reasonable one for which no warrant was necessary. The case came before the full Court of Appeals sitting *en banc* which upheld the opinion issued by the panel of three judges which the court said had been correctly decided and that inspections of motor vehicles performed by police officers who were entitled to be on the property where the vehicles were located, which in no way damaged the vehicles, and were limited to determining the correct identification numbers thereof, were not searches within the meaning of the Fourth Amendment; alternatively, if such inspections constituted a Fourth Amendment search, then no search warrant was necessary because the inspections were reasonable and did not violate the right of the people to be secure in their persons, houses, papers or effects. The opinion of the court sitting *en banc* was delivered August 13, 1970, and is summarized in the Criminal Law Reporter, Vol 7, p 2468 *et seq.* Judge Godbold, in dissenting, criticized the majority decision as not resting upon the familiar power to search a vehicle incident to arrest of the occupants; nor does the majority opinion rest upon the warrantless search of a mobile instrumentality for contraband; neither does the majority opinion stånd on the power to search for weapons and fruits of a crime where there is probable cause to do so as was the basis of the opinion of the Supreme Court in *Chambers* v. *Maroney* (1970), 399 US 42 (90 S Ct 1975, 26 L Ed 2d 419).

[2] For a detailed discussion of the reasonableness of police action in a stop and frisk situation, see the opinion of Chief Justice Warren in *Terry* v. *Ohio* (1968), 392 US 1 (88 S Ct 1868, 20 L Ed 2d 889).

nation at the preliminary examination was as follows:

"*Q.* And after looking through the right side, you looked through the windshield, is that correct?

"*A.* The right side of the windshield.

"*Q.* And at that point, you told us you saw the handle of an object sticking out?

"*A.* No, sir.

"*Q.* All right. What did you do then?

"*A.* I walked around the front of the car and looked in the left-hand side of the windshield and then saw the handle.

"*Q.* The left-hand side. How much of a handle could you see at that point?

"*A.* Three, three and a half inches, maybe almost four.

"*Q.* Did you observe anything else in the car at that time?

"*A.* Baby's chair—one of these chairs you put infants in, magazines, chunk of suet.

"*Q.* Of what?

"*A.* Meat—small piece.

"*Q.* Was it razed?

"*A.* No, it was about the size of a dime. Various articles, scattered around the back seat.

"*Q.* Based on your recollection, officer, would you describe the part of the handle of this object that you saw as you were looking through the windshield?

"*A.* It was either chrome or high polish type on the knob with rings going around it.

"*Q.* Now, when you saw this handle, did you have some idea of what it was or might be?

"*A.* To me, it looked like a knife.

"*Q.* Uhm, uhm. You saw baby's things in the car. Could it just as easily have been a child's toy, a baby's toy?

"*A.* No, I couldn't think of any other articles that look like a handle, a knife handle, unless it would be a sword."

Detective Spence was lawfully on the premises. His visual examination of the automobile was definitely called for in line with his duties as a police officer and led to the discovery of incriminating evidence. As a result of what he observed, under the plain view doctrine, his seizure of the knife and sheath was fully justified.

The trial court and the Court of Appeals are affirmed.

T. E. BRENNAN, C. J., and DETHMERS, BLACK, and T. M. KAVANAGH, JJ., concurred with ADAMS, J.

T. G. KAVANAGH, J., concurred in result.

KELLY, J., did not sit in this case.