PEOPLE v STERGOWSKI

1. WEAPONS—POLICE—PISTOLS.

Police officers properly ordered defendant to drop the weapon where they responded to a call that a man was firing "shots" at a given location and, when they approached the address given, a man identified as defendant ran in front of the patrol car carrying a pistol; failure to so order would have been imprudent, if not a dereliction of duty; when defendant refused to drop the pistol and fled into a house, the police had authority to pursue defendant and enter the house.

2. ARREST—STATUTES—MISDEMEANORS—PEACE OFFICERS—POLICE—ASSAULT AND BATTERY.

A statute permits an arrest without a warrant if there is commission of a misdemeanor in the presence of a peace officer and defendant was lawfully arrested for assault when he threw a metal box at a police officer striking him in the face; a statute provides that as a minimum one convicted of an assault is guilty of a misdemeanor (MCLA 750.81, 764.15).

3. SEARCHES AND SEIZURES—FOURTH AMENDMENT—REASONABLENESS.

The central issue, in any Fourth Amendment inquiry, is the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security; at some point the courts must evaluate the reasonableness of a particular search or seizure in the light of the particular circumstances (US Const, Am IV).

4. SEARCHES AND SEIZURES—OFFICERS.

A search is to be tested in the light of the information or facts possessed by the officer at the time he made the search.

5. SEARCHES AND SEIZURES—MOTION TO QUASH—HEROIN—ARREST—POLICE—PISTOLS—ASSAULT AND BATTERY.

Motion to quash was properly denied and heroin found by the arresting officers on defendant's person was admissible into

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arrest §§ 80–94.
[2–5] 5 Am Jur 2d, Arrest §§ 26, 28.

evidence as being the product of a valid search and seizure incident to a lawful arrest because defendant was subject to a warrantless search incident to a lawful arrest where the police had received a report of an individual firing "shots", they saw defendant carrying what looked to be and was a pistol and ordered defendant to drop the gun, defendant refused to drop the weapon when ordered and fled from the officers, the officers properly followed him into a house where he tried to hide the weapon but was disarmed, defendant then threw a metal box at the officer striking him in the face and he was arrested for assaulting the police officer; all these facts justify the body search and it was reasonable and proper.

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and Bashara and O'Hara, JJ., denying application for leave to appeal from Recorder's Court of Detroit, Robert J. Colombo, J. Submitted January 11, 1974. (No. 4 January Term 1974, Docket No. 54, 875.) Decided June 25, 1974.

Robert Stergowski was charged with possession of heroin in Recorder's Court of Detroit and bound over for trial. Defendant's motion to quash the information denied. Defendant's application for leave to appeal to the Court of Appeals denied. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *James M. Wouczyna,* Assistant Prosecuting Attorney, for the people.

*Kenneth A. Webb,* for defendant.

M. S. COLEMAN, J.

## FACTS

Defendant is appealing a denial of his motion to

suppress evidence or quash the information. Pursuant to GCR 1963, 797 the judge certified that this case "involves a controlling question of law as to which there is substantial ground for difference of opinion". This Court granted defendant's emergency application for leave to appeal.

The case arises from an arrest made November 26, 1972. Two police officers, William Crawford and James Pickett, responded to a call that a man was firing "shots" at a given location. When they approached the address given, a man identified as defendant ran in front of the patrol car. He was carrying a pistol.

One officer ordered defendant to drop the pistol. Defendant hesitated but continued running towards a house. The officer pursued and pushed open the door to the house. Defendant ran into the bedroom and attempted to conceal the pistol under a mattress as the officer approached him.

The officer grabbed defendant's hand and disarmed him. Defendant then threw a metal box at the officer striking him in the face. Defendant ran into another room where he was subdued.

Defendant was arrested for assaulting the police officer. Officer William Crawford testified:

"We went into the living room and I searched him for further offensive weapons. He had nothing in any of his pockets except he had a large bulge in his right pocket, and I felt it and it appeared to have some bullets in there and I removed everything in that pocket and it turned out only to be a large quantity of money, some of it being counterfeit, and four bullets for a 9-millimeter gun and some heroin and a plastic vial, and inside the plastic vial there was 11 tinfoil packs."

The officer further testified that he could see the tinfoil packs through the clear plastic and stated

that from his experience heroin is carried in this fashion.

Analysis of the seized material confirmed the presence of 3.24 grams of powder containing heroin. Defendant was charged with unlawfully possessing a controlled substance.

In the motion to suppress or quash, it was contended that the police were without authority to pursue defendant into the house and arrest him. Defendant contended that his resistance was justified. Even if the police could pursue, defendant argued that they could not search him but could only "pat him down" to determine if defendant possessed a weapon.

After extensive argument, the court denied the motion to quash. The judge felt "that under all of the totality of circumstances" the officer had probable cause to believe defendant had committed a felony. Furthermore, there was an unjustified assault and battery upon the officer which independently authorized the arrest and search.

## ISSUES
### 1.

Was the defendant lawfully arrested?

### 2.

Is the heroin found by the arresting officers on defendant's person admissible into evidence as being the product of a valid search and seizure incident to a lawful arrest?

## STATUTES

MCLA 764.15; MSA 28.874 provides, in part:

"Any peace officer may, without a warrant, arrest a person—(a) For the commission of any felony or misdemeanor committed in his presence".

MCLA 764.25; MSA 28.884 reads:

"Any person making an arrest shall take from the person arrested, all offensive weapons or incriminating articles which he may have about his person and must deliver them to the sheriff of the county, chief of police of the city or to the magistrate before whom he is taken."

## Const 1963[1]

Art 1, § 11 provides that a person has a right to be "secure from unreasonable searches and seizures".

## DISCUSSION
### 1.

### Confrontation

The officers were responding to a complaint that a man was firing "shots" in front of a house. As they approached the address, defendant ran in front of their car carrying a pistol. The officers ordered him to drop the weapon.

The action of the officers was justified and proper even if we go so far as to assume that probable cause to arrest defendant was lacking at that moment. The United States Supreme Court in *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968) noted:

"[T]he need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an

[1] Also US Const, Am IV.

arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (p 24.)

In *Terry* the Court did not require the officer to be "absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger". (p 27.)

This Court in *People v Whalen,* 390 Mich 672, 680; 213 NW2d 116 (1973) cited the following passage from *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972) as further explaining the holding in *Terry:*

" 'In *Terry* this Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest". * * * The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. * * * A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. * * * ' "

Under the facts of the instant case, it was proper for the officers to order defendant to drop the weapon. Failure to so order would have been

imprudent, if not a dereliction of duty. There was nothing improper about this initial confrontation.

*Pursuit*

The police had authority to order defendant to stop and drop the pistol. When defendant refused and fled into a house, the police had authority to pursue defendant and enter the house.

In *Warden v Hayden,* 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967), the police were informed that a robber fleeing the scene of a crime had entered a certain house. The officers were permitted to enter the house and search the basement and two floors. They found incriminating evidence which was introduced at trial. The United States Supreme Court said at pp 298–299:

"We agree with the Court of Appeals that neither the entry without warrant to search for the robber, nor the search for him without warrant was invalid. Under the circumstances of this case, 'the exigencies of the situation made that course imperative'. *McDonald v United States,* 335 US 451, 456 [69 S Ct 191; 93 L Ed 153 (1948)]. * * * They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape."

The officers in this case were responding to a complaint that an individual was firing a gun. They saw defendant carrying a pistol. Defendant refused to drop the weapon when ordered. The

officers had sufficient basis for concluding that
defendant was dangerous. They had ample cause
to take those measures necessary to insure that
defendant did not cause injury to anyone.

The police had authority to stop defendant on
the street and disarm him. The fact that defendant
fled into the house does not negate that authority,
but enhances it. The police were witness to con-
duct which further confirmed the need to take
immediate action. The circumstances warranted
the pursuit.[2] The officers were justified in entering
the house.

### Events in the House

The officers had authority to confront defendant
on the street and order him to drop the pistol. The
officers had authority to pursue defendant and
enter the house. For conduct which occurred in
the house, defendant was arrested.

When the first officer entered the house, defend-
ant ran into a bedroom. The officer saw him at-
tempting to hide the pistol under a mattress. The
officer disarmed defendant. In the struggle, defend-
ant threw a metal box at the officer striking him
in the face. Defendant left the bedroom and was
apprehended in another room. He was then placed
under arrest.

MCLA 764.15; MSA 28.874 permits an arrest
without a warrant if there is commission of a

---

[2] It further appears that the police had witnessed criminal conduct.
Defendant was seen carrying a pistol. Section 66-1-7 of the Code of the
City of Detroit says with certain exceptions that no person "shall
draw, handle or flourish a revolver, pistol or other gun in any public
street". Section 66-4-2 makes it unlawful "to carry a firearm on any
public street or in any public place unless it is unloaded and in a
case". *Also see* MCLA 752.a863; MSA 28.436(24) making it a misde-
meanor to "recklessly or heedlessly or wilfully or wantonly use, carry,
handle or discharge any firearm without due caution and circumspec-
tion for the rights, safety or property of others".

misdemeanor in the presence of a peace officer. Defendant assaulted the officer when he threw the metal box. MCLA 750.81; MSA 28.276 provides that as a minimum one convicted of an assault is guilty of a misdemeanor. It is clear that defendant was lawfully arrested for assault.

2.

When defendant was arrested, the police acted to insure that he was totally disarmed. There was a large bulge in defendant's right pants pocket. There also appeared to be bullets in the pocket. The items were removed. There was a large quantity of money, 4 bullets and a clear plastic vial containing 11 tinfoil packets. It is this evidence which defendant wishes to have suppressed.

In any Fourth Amendment inquiry, the central issue is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security". *Terry*, p 19. At some point the courts "must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances". *Terry*, p 21. A similar analysis is found in *People v Eddington*, 387 Mich 551; 198 NW2d 297 (1972) at pp 564–565. The Court stressed the reasonableness of the search "in the light of all of the circumstances". They noted that "the exigencies of the situation" supported the search.

*Sibron v New York*, 392 US 40; 88 S Ct 1889; 20 L Ed 2d 917 (1968) presented two cases questioning the reasonableness of a search and seizure. One conviction was reversed because the police had neither probable cause for arrest nor reasonable grounds to believe the suspect was armed. The other conviction was affirmed.

In affirming, the Court, Chief Justice Warren writing, noted that the officer had observed activity which indicated criminal conduct. The Court found it "difficult to conceive of stronger grounds for an arrest, short of actual eyewitness observation of criminal activity". (p 66.) When the officer apprehended one of the suspected burglars,

"he had the authority to search Peters, and the incident search was obviously justified 'by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime'. *Preston v United States,* 376 US 364, 367 [84 S Ct 881; 11 L Ed 2d 777] (1964). Moreover, it was reasonably limited in scope by these purposes. Officer Lasky did not engage in an unrestrained and thorough-going examination of Peters and his personal effects. He seized him to cut short his flight, and he searched him primarily for weapons. While patting down his outer clothing, Officer Lasky discovered an object in his pocket which might have been used as a weapon. He seized it and discovered it to be a potential instrument of the crime of burglary." (p 67.)

The object seized was an "opaque plastic envelope, containing burglar's tools". (p 49.)

Further reasons supporting such a search as occurred in the instant case are listed in *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969). The Court explored the antecedents of the theory approving a warrantless search incident to a lawful arrest. The Court said at 762–763:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and

seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

This language in *Chimel* had been anticipated by our Courts. In *People v Ritholz,* 359 Mich 539, 551; 103 NW2d 481 (1960), the Court noted that the defendant had been properly arrested under MCLA 764.15; MSA 28.874:

"Such being the case it is clear, as we held in *People v Harris,* 300 Mich 463, 465 [2 NW2d 464 (1942)] quoting *People v Cona,* 180 Mich 641, 652 [147 NW 525 (1914)] that:

" ' "The police have the power and it is also their duty to search the person of one lawfully arrested, and also the room or place in which he is arrested, and also any other place to which they can get lawful access, for articles that may be used in evidence to prove the charge on which he is arrested." ' "

Although *Chimel* more strictly circumscribed the permissible area of search, both opinions recognized the duty of the police to search those they arrest.[3]

The issue of warrantless searches incident to lawful arrest was reviewed by the United States

[3] *Also see People v Zeigler,* 358 Mich 355; 100 NW2d 456 (1960), *People v Gonzales,* 356 Mich 247; 97 NW2d 16 (1959), *People v Bommarito,* 309 Mich 139; 14 NW2d 812 (1944), *People v Orlando,* 305 Mich 686; 9 NW2d 893 (1943), and *People v Licavoli,* 245 Mich 202; 222 NW2d 102 (1928).

Supreme Court in *United States v Robinson,* 414 US 218; 94 S Ct 467; 38 L Ed 2d 427 (1973) and *Gustafson v Florida,* 414 US 260; 94 S Ct 488; 38 L Ed 2d 456 (1973). In *Robinson* the defendant was placed under arrest for driving while his license was revoked. He was searched. In an inside pocket of his coat, the police discovered a cigarette package which they opened. In it they found capsules which analysis proved to contain heroin. Defendant was convicted for a drug offense. The heroin was admitted into evidence.

The Court undertook a detailed analysis of authority sanctioning warrantless searches incident to lawful arrests. The Court concluded as follows (p 235):

"A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest the full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

The Court noted that the officer need not be placed in fear of the defendant or suspect that the

defendant was armed as "it is the fact of custodial arrest which gives rise to the authority to search".

In *Gustafson,* the defendant was arrested for driving without carrying his license. He was searched and found to be in possession of marijuana. This was taken from a cigarette box inside defendant's coat pocket which was opened and found to contain marijuana. Defendant was convicted for unlawful possession of the marijuana. The Court said *Robinson* was controlling. The limitations which *Terry* placed "on protective searches conducted in an investigatory stop situation based on less than probable cause are not to be carried over to searches made incident to lawful custodial arrests".

Defendant relies upon *Caver v Kropp,* 306 F Supp 1329 (ED Mich, 1969) for support. That case was, in turn, based upon the holding in *Colosimo v Perini,* 415 F2d 804 (CA 6, 1969) which later was vacated by the United States Supreme Court, 399 US 519; 90 S Ct 2233; 26 L Ed 2d 777 (1970). The Sixth Circuit at 432 F2d 1357 (1970) then reached a decision contrary to that of their initial *Perini* decision.

## SUMMARY

1. Based on information received regarding the shooting at a certain location and the sighting of defendant there carrying a pistol, police were warranted in a belief that their safety and that of others was in danger. The police acted properly in ordering defendant to drop the weapon even though they did not have probable cause to arrest him.

2. The authority of the police to stop and disarm

the defendant did not evaporate when defendant
disobeyed their command and fled into his house.
Such actions buttressed the conclusion that de-
fendant was dangerous. The police had ample
cause to enter the house and disarm defendant.
The circumstances made such actions immediately
necessary. Prompt action was required and such
was taken.

3. Being properly inside the house, police could
arrest defendant for a felony or misdemeanor
committed in their presence. Defendant, by strik-
ing the officer, committed an assault. As a mini-
mum, this is a misdemeanor. Defendant was prop-
erly and lawfully arrested.

4. It is unquestioned that defendant was subject
to a warrantless search incident to the lawful
arrest. In *People v Tisi,* 384 Mich 214; 180 NW2d
801 (1970), the Court said at p 219:

"The reasonableness of any search or seizure must be
determined as of the time of the search or seizure. In
the determination of reasonableness, consideration may
be given to the information possessed by the officer.
*People v Harper* (1962), 365 Mich 494 [113 NW2d 808]."

The search is to be tested "in the light of the
information or facts possessed by the officer at the
time he made the search". *People v Danny Wil-
liams,* 383 Mich 549, 556; 177 NW2d 151 (1970).

The police had received a report of an individual
firing "shots". They saw defendant carrying what
looked to be and was a pistol and ordered defend-
ant to drop the gun. Defendant refused to drop the
weapon when ordered and fled from the officers.
The officers properly followed him into a house
where he tried to hide the weapon but was dis-
armed. Defendant struck an officer with a metal

box. Defendant was lawfully arrested.[4] All these facts justify the body search. It was reasonable and proper. The entire range of search and seizure cases speak to the "reasonableness" of the procedures. In the context of this series of events, the officers' acts were reasonable.

The denial of defendant's motion to quash is affirmed.

SWAINSON, LEVIN, and J. W. FITZGERALD, JJ., concurred with M. S. COLEMAN, J.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH and WILLIAMS, JJ., concurred in the result of the opinion by M. S. COLEMAN, J.

---

[4] Going even further than the facts of this case necessitate, *see People v Kuntze,* 371 Mich 419; 124 NW2d 269 (1963) which was recently reaffirmed in *People v Whalen, supra.* The Court in *Kuntze* said at 423–424:

"Aside from those cases in which legality of seizure of evidence depends solely upon the reasonableness of a search without a warrant made incidental to a valid arrest, a prior valid arrest is not essential to a police officer's right to search and seize. Like most State and Federal courts, we have previously held that the validity of a search and seizure made without a warrant does not depend upon a prior valid arrest. *People v Kamhout,* 227 Mich 172 [198 NW 831 (1924)]; *People v Bringardner,* 233 Mich 449 [206 NW 988 (1926)]; *People v Dungey,* 235 Mich 144 [209 NW 57 (1926)]; *People v Alicki,* 321 Mich 701 [33 NW2d 124 (1948)]. *See, also, Carroll v United States* (1925), 267 US 132, 158 (45 S Ct 280, 69 L Ed 543, 39 ALR 790), and annotation at 89 ALR2d 715, 'Lawfulness of nonconsensual search and seizure without warrant, prior to arrest.' "

The Court said the legal propriety of a search and seizure subsequent to a lawful stop "depends upon the information the officers then possessed and subsequently learned immediately before" the seizure (pp 424–425). *Also see People v Gonzales, supra.*