PEOPLE *v.* DANNY WILLIAMS.

OPINION OF THE COURT.

1. EVIDENCE — SEARCHES AND SEIZURES — ARREST — AUTOMOBILES — PROBABLE CAUSE.

Admission in evidence of burglary tools seized in a search of an automobile without a warrant was proper as being reasonable and based on probable cause where made by a police officer, who had been informed by radio that defendant and two others were at the station and that there were warrants for their arrest, saw three men flee and be captured, was advised that a felony had been committed just before he arrived at the station, saw a check protector on the floor of the automobile, and after opening the car door, lifted some clothes on the back seat and saw a fully loaded automatic rifle.

DISSENTING OPINION.

T. G. KAVANAGH, J.

2. SEARCHES AND SEIZURES—WITHOUT WARRANT—PROPRIETY.

*The propriety of a search without a warrant is tested by the knowledge and state of mind of the searcher.*

3. SEARCHES AND SEIZURES—INCIDENT TO ARREST.

*Searches incident to arrest may be for weapons threatening the safety of the arresting officer or to prevent the destruction of evidence of the crime for which the arrest is made or for contraband.*

4. EVIDENCE — SEARCHES AND SEIZURES — ARREST — AUTOMOBILES — PROBABLE CAUSE.

*Admission in evidence of burglary tools seized in a search of an automobile without a warrant was improper where the police officer who made the search was not in danger at the*

REFERENCE FOR POINTS IN HEADNOTES
[1–4]  47 Am Jur, Searches and Seizures § 18.

*time as defendant and his companions had been removed to
the police station; the officer did not know what he was look-
ing for as he did not know for what crime the men had been
arrested; and a search of the car by the officer revealed
no contraband, only an office machine which was later estab-
lished to be a check protector, as, on these facts, a magistrate,
even standing beside the car, could not properly authorize a
search warrant.*

Appeal from Court of Appeals, Division 3, Levin,
P. J., and Holbrook and Danhof, JJ., affirming
Berrien, Philip A. Hadsell, J. Submitted March
10, 1970. (Calendar No. 19, Docket No. 52,427–1/2.)
Decided June 1, 1970.

16 Mich App 557, affirmed.

Danny Williams was convicted of the possession
of burglary tools. Defendant appealed to the Court
of Appeals. Affirmed. Defendant appeals. Af-
firmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Ronald J. Taylor,*
Prosecuting Attorney, and *Hugh W. Black,* Assist-
ant Prosecuting Attorney, for the people.

*Danny Williams, in propria persona.*

ADAMS, J. The question upon this appeal is
whether the search of an automobile without a war-
rant was reasonable. Upon trial of defendant for
the crime of possession of burglary tools, the trial
judge, Philip A. Hadsell, held that the search was
reasonable and admitted in evidence the items seized.
Defendant was found guilty by a jury and was sen-
tenced by the trial judge on November 10, 1966.

On May 16, 1968, defendant's motion for a new
trial was denied by Circuit Judge Chester J. Byrns.

We adopt the following from his opinion on defendant's motion:

"Admittedly, these tools were seized without a search warrant. Each case, of course, on this question must be determined on its own facts. In this case, both parties appear to agree that the test of reasonableness depends on Officer Neil Teske.

"About 7 p. m. on August 1, 1966, defendant with a companion drove a Plymouth automobile for service to the filling station from which he had rented said automobile. The owner of said station, Edward Jaskiewicz, called the Benton Harbor police and told them defendant was at the station. There were warrants for concealment of stolen property over $100 out for the arrest of defendant and his two other companions on another matter or matters.

"As police cars came to the station, defendant and two others ran away. Defendant hid some 250 feet from his automobile. Some of the police at the scene had drawn guns.

"Officer Paul Mills found defendant, whom he knew, and ordered him to come out and arrested him on the outstanding felony warrant, placed him in handcuffs, and brought him to the Benton Harbor police station, which the court knows to be some three or four blocks from this scene.

"Officer Teske (p 56 of the preliminary examination) arrived at the filling station of Jaskiewicz in response to a call over his squad car radio that defendant and two others were there and that there were warrants for their arrest. He saw all three men, including defendant, flee, and then be captured. Teske testified after he arrived Jaskiewicz told him one of the three men had pulled an automatic pistol at Jaskiewicz and then threw it at him. Teske testified (p 57 of preliminary examination) that this meant to him a felony had been committed—assault with a deadly weapon and/or carrying a concealed weapon. Also Teske said he had been advised of a felony committed just before he arrived (p 72).

"Mr. Teske said after talking with Jaskiewicz and seeing the capture, Teske [*sic*] opened the door of the said Plymouth at the filling station and also the trunk. Teske had knowledge that this automobile had been in the possession of defendant and the other two men (p 65 of the preliminary examination). He made his search in the presence of Mr. Jaskiewicz who saw some or all of the items seized by Mr. Teske. Teske testified also that the search was made incident to an arrest (p 65).

"Before opening the door of the Plymouth, Teske said he could see the check protector on the floor. After opening the door, Teske lifted some clothes on the back seat and saw an automatic rifle underneath it—fully loaded.

"Teske then used the car keys and opened the trunk and found an electric drill, two crowbars and a hacksaw later introduced at trial as alleged burglar tools. The automobile and contents were later moved to the Benton Harbor police station lot.

"Was this search without search warrant so unreasonable and in violation of the constitutional prohibitions as to require suppressing the evidence seized?

"The court answers on the above facts as shown in the preliminary examination in the negative.

"Officer Teske had information that defendant, wanted on a warrant, was at the filling station. The fact that at the time he may not have known for what crime the warrant had been issued is immaterial. He arrived with other police to see defendant and two others fleeing the scene. He was told by Jaskiewicz of being assaulted by a dangerous weapon. He saw defendant arrested at the scene. Before arriving at the scene he had been told of a felony being committed.

"The initial search at the scene of defendant's arrest yielded discovery of the evidence used at the trial. That later the same day another inspection or search was made at the police station park-

ing lot does not prevent use of the evidence if it was the same evidence that was lawfully found and seized in the initial search. In fact, under all these circumstances the second search itself without warrant could be reasonable as well. It was not even then remote in time or place, or completely unrelated to the arrest. This question as to the evidence here involved is not before this court in view of the finding above.

"Officer Teske had more than probable cause based on ample reasonable grounds to make his initial search without a warrant viewed from what he saw and knew prior to the search, and the fact he had been told on arriving at the scene of the presence of a gun. No question is raised challenging the legality of defendant's arrest at the filling station.

"The fact that defendant was arrested 250 feet away from his automobile does not change the legality of the search of the vehicle, especially considering the defendant had run from the vehicle and tried to hide.

"In fact, under the circumstances then existing, the officer would have been remiss in not making a search of the automobile. If the search had been made some time later and after the car had been moved, might the defendant then claim the evidence was 'planted' there by another?

"This is not a situation of a search made after the defendant was in jail for a completely unrelated offense (*Preston* v. *United States* [1964], 376 US 364 [84 S Ct 881; 11 L Ed 2d 777]). Note the distinctions made in *Cooper* v. *California* (1967), 386 US 58 (87 S Ct 78; 17 L Ed 2d 730)."

The Court of Appeals, in a *per curiam* opinion (16 Mich App 557) held as follows (p 562):

"In testing the search and seizure to determine if it was reasonable, we must look to the facts. A warrant had been issued for defendant and three

other men. Those arrested were the defendant and two other men. One had not been accounted for and no one knew just where he was at the time. There was a definite need to prevent the possible destruction of the evidence, the fruits of the crime, and to prevent the firearms from being taken from the car by the one defendant not found in the process of arresting the other three named in the felony warrant. This rented car was in a place where it was public and open for an interested person to destroy the evidence or use it to threaten or harm the police. The police did not have exclusive control of the car.

"We rule that the search and seizure under the facts in this case, was substantially contemporaneous with the arrest and reasonable. No error was committed in admitting the evidence in question."

In *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881; 11 L Ed 2d 777), the United States Supreme Court, after considering searches and seizures that are justified as incidental to a lawful arrest, said (pp 367, 368 [84 S Ct at p 883; 11 L Ed 2d at p 780]):

"But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. *Agnello* v. *United States, supra,* 269 US, at 31 (46 S Ct at p 5; 70 L Ed at p 148, 51 ALR at p 413). *Here, we may assume,* as the Government urges, *that,* either *because the arrests were valid* or because the police had probable cause to think the car stolen, *the police had the right to search the car when they first came on the scene."* (Emphasis added.)

The search in *Preston* did not occur at the time of arrest for vagrancy but at a later time after the

car was driven by an officer to the station and then towed to a garage. The search was declared too remote in time or place to have been made as incidental to the arrest.

While *Cooper* v. *California* (1967), 386 US 58 (87 S Ct 788; 17 L Ed 2d 730), is not applicable to this case, it may be noted that in *Cooper* the search occurred a week after the arrest of petitioner. It was upheld because the officers who seized petitioner's car were required to do so by state law and to keep it impounded and held as evidence until forfeiture proceedings were concluded. The Court said (pp 61–62 [87 S Ct at p 791; 17 L Ed 2d at p 733]):

"The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it."

In *Dyke* v. *Taylor Implement Manufacturing Co., Inc.* (1968), 391 US 216 (88 S Ct 1472; 20 L Ed 2d 538), the United States Supreme Court, after reviewing *Preston* and *Cooper,* stated (p 221 [88 S Ct p 1475; 20 L Ed 2d p 543]):

"*Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office.* Brinegar v. United States (1949), 338 US 160 (69 S Ct 1302; 93 L Ed 1879); Carroll v. United States (1925), 267 US 132 (45 S Ct 280; 69 L Ed 543, 39 ALR 790). The cases so holding have, however, always insisted that the officers conducting the search have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." (Emphasis added.)

The Court held that the search in that case was not shown to have been based upon sufficient cause.

In *Chimel* v. *California* (1969), 395 US 752 (89 S Ct 2034; 23 L Ed 2d 685), the United States Supreme Court once again considered the question as to what constitutes a reasonable search and seizure. The case does not involve the search of an automobile but does involve the permissible scope of a search of the place where a defendant is arrested. The Court quoted with approval from *Preston* supporting the proposition that a warrantless search must be contemporaneous with arrest. As to the area which might be searched at the time of the arrest, the Court said (p 768 [89 S Ct at p 2043; 23 L Ed 2d at p 697]):

"The search here went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him. There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area."

In this case the Court of Appeals reasoned that the search and seizure were justified due to the fact that one wanted individual had not been accounted for and no one knew just where he was, thereby creating a need to prevent the possible destruction of the evidence and to prevent firearms from being taken out of the car by the one defendant not found. We test the search in the light of the information or facts possessed by the officer at the time he made the search.

Officer Teske's pertinent testimony is as follows:

"*Q*. What personal information did you have in connection with these three individuals, Rogers, Williams and Fossey?

"*A.* I received information over the squad car radio that these three subjects were at the filling station and felony warrants were being held by the state police at South Haven.

"*Q.* When you arrived there, what did you observe?

"*A.* When I arrived, all the subjects had fled, and the officers were over on Territorial, and I drove around and observed Officer Beilman with Mr. Rogers against the side of a vehicle, and I assisted in handcuffing and getting him in the squad car.

"*Q.* Did you then return to the rent-a-car lot?

"*A.* Yes, sir.

"*Q.* And were there any automobiles there?

"*A.* Yes, sir.

"*Q.* What automobiles were there?

"*A.* A 1966 Plymouth.

"*Q.* Were there other automobiles, besides that one?

"*A.* On the drive itself, next to the pumps, no.

"*Q.* And did you have conversation with Mr. Jaskiewicz at that time?

"*A.* A slight conversation.

"*Q.* Do you recall the substance of the conversation?

"*A.* He told me something about one of the subjects pulling a gun on him, and threw it at him when he chased him on Territorial, and described the weapon as an automatic pistol.

"*Q.* What did this mean to you?

"*A.* That a felony was committed, reasonable grounds to believe there was a felony committed.

"*Q.* And what crime was involved?

"*A.* Assault with a deadly weapon, at the very least. It could have been assault with attempt [*sic*] to murder.

"*Q.* Anything else?

"*A.* Carrying a concealed weapon.

"*Q.* And did Mr. Jaskiewicz tell you where the subject came from?

"*A.* Out of the car, he said.

"*Q.* What did you then do?

"*A.* Open the doors and looked into the car.

"*Q.* And did you observe anything in the automobile before you opened the doors?

"*A.* Yes, I could observe some sort of an office machine sitting on the right rear floor.

"*Q.* Did you know what the warrants were for at that time?

"*A.* Not at that time.

"*Q.* You say you observed some sort of an office machine?

"*A.* Yes, sir.

"*Q.* What did you then do?

"*A.* After I opened the doors?

"*Q.* Yes.

"*A.* I lifted the clothing on the back seat up and found a rifle, laying underneath it.

\* \* \*

"*Q.* Do you know whether the rifle was loaded or unloaded at the time you first observed it?

"*A.* It was fully loaded.

"*Q.* You opened the trunk of the automobile?

"*A.* Yes, sir.

"*Q.* Where did you secure the keys?

"*A.* From the ignition.

"*Q.* What did you find in the trunk?

"*A.* Just this one-half inch electric drill, two crowbars, and a hacksaw.

\* \* \*

"*Q.* When did this search of the automobile actually take place, officer?

"*A.* At the service station drive.

"*Q.* And this was immediately after the apprehension of Rogers, Fossey and Williams?

"*Mr. Keller:* I'll object. The question is leading.

"*The Court:* I'll sustain the objection.

"*Q.* Were you present when Rogers, Fossey and Williams were apprehended?

"*A.* Yes.

"*Q.* And in what stage of the proceeding did you then examine this car?

"*A.* Immediately after they'd been apprehended and removed to the Benton Harbor police station."

The analysis of Judge Byrns sets forth the facts known to Officer Teske at the time the search was made and the reasons why it was reasonable for him to proceed as he did.

The salient facts, as noted by Judge Byrns, are:

1. Teske arrived at the filling station in response to a call over his squad car radio that defendant and two others were there and that there were warrants for their arrest.

2. He saw three men flee and be captured.

3. He was advised that a felony had been committed just before he arrived—assault with a deadly weapon or carrying a concealed weapon.

4. Before opening the door of the Plymouth, he could see a check protector on the floor.

5. After opening the car door, he lifted some clothes on the back seat and saw an automatic rifle underneath them. It was fully loaded.

6. Only after all of the above had transpired, did he use the car keys and open the trunk.

We agree with Judge Byrns that Officer Teske had more than probable cause, based on ample reasonable grounds, to make his initial search without a warrant. No error.

The Court of Appeals and the trial court are affirmed.

T. E. BRENNAN, C. J., and DETHMERS, KELLY and BLACK, JJ., concurred with ADAMS, J.

T. M. KAVANAGH, J., concurred in the result.

T. G. KAVANAGH, J. (*dissenting*). Coincident to arrest, *Preston* v. *United States* (1964), 376 US 364

(84 S Ct 881; 11 L Ed 2d 777) holds that without a warrant, a search may be made of the person arrested or the things under his immediate control for weapons or the fruits or implements used to commit the crime for which the person is arrested.

In the case at bar, the defendant was hiding more than 200 feet away from the car when he was arrested. The arrest was made by an officer who had been informed that a warrant had been issued for the defendant.*

In this case the arrest had been completed and the officer conducted the search after the arrest and removal of the defendant to the police station. He had been informed that the defendant had thrown an automatic pistol at the gas station owner and that the arrest was on the strength of a warrant for some crime. From this the searching officer believed the defendant had committed the crime of "assault with a deadly weapon and/or carrying a concealed weapon" or "assault with attempt to murder."

The propriety of a search without a warrant is tested by the knowledge and state of mind of the searcher.

Searches incident to arrest may be for weapons threatening the safety of the arresting officer or to prevent the destruction of evidence of the crime for which the arrest is made (*United States* v. *Rabinowitz* [1950], 339 US 56 [70 S Ct 430; 94 L Ed 653]) or for contraband.

From the facts set forth in my brother's opinion, the searching officer: (1) Was not in danger at the time of the search (the defendant and his companions had been removed to the police station), (2) He did not know what he was looking for (he

---

* The searching officer testified that he did not know for what crime the arrest warrant had been issued.

did not know for what crime the men had been arrested), and (3) A sight search of the car by the searching officer revealed no contraband—only an office machine (later established to be a check protector).

On these facts, a magistrate even standing beside the car could not properly authorize a search warrant.

I would reverse the conviction.