PEOPLE v RAGLAND

Docket No. 79390. Submitted November 12, 1985, at Detroit.—Decided
February 18, 1986.

Jimmie Ragland was found guilty of carrying a pistol in a motor
vehicle after a bench trial in Wayne Circuit Court and was
sentenced, William J. Giovan, J. Defendant appealed, alleging
that the trial court erred in failing to suppress evidence of the
pistol on the basis of an illegal search and seizure. *Held:*

1. The search of the passenger area of defendant's vehicle
and subsequent seizure of the gun falls within the scope of a
permissible search incident to a lawful custodial arrest. Neither
the search of the vehicle nor the seizure of the pistol violated
defendant's constitutional rights.

2. Defendant's pistol was not seized in violation of the in-
terim bail statute.

3. The trial court did not err in denying defendant's motion
to suppress evidence of the pistol.

Affirmed.

A. T. DAVIS, J., concurred with the decision in this case, but
wrote separately to indicate his dissatisfaction with the rule
that a police officer may search, without a warrant, the passen-
ger compartment of a vehicle and containers therein incident
to a lawful custodial arrest. He would limit the right to search
to the arrestee's person and the area within the arrestee's
immediate control at the time of the arrest.

1. CRIMINAL LAW — SEARCHES AND SEIZURES — CONSTITUTIONAL LAW.
The Michigan Constitution does not impose a higher standard of
reasonableness for searches and seizures than that imposed by
the Fourth Amendment of the federal constitution (US Const,
Am IV; Const 1963, art 1, § 11).

2. CRIMINAL LAW — SEARCHES AND SEIZURES — AUTOMOBILES —
CUSTODIAL ARREST.
A police officer may search, as a contemporaneous incident to a

REFERENCES
Am Jur 2d, Searches and Seizures §§ 37-39, 96.
Lawfulness of search of motor vehicle following arrest for traffic
violations. 10 ALR3d 314.

lawful custodial arrest of the occupant of an automobile, the passenger compartment of the vehicle and examine the contents of any containers found therein.

3. CRIMINAL LAW — SEARCHES AND SEIZURES — SEARCH INCIDENT TO ARREST — CUSTODIAL ARREST — INTERIM BAIL STATUTE.

The interim bail statute does not prohibit police officers from searching arrestees and the passenger compartment of the arrestee's automobile and containers therein where the searches are made pursuant to a lawful custodial arrest (MCL 780.581; MSA 28.872[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, for the people.

*Steven F. Fishman,* for defendant on appeal.

Before: GRIBBS, P.J., and HOOD and A. T. DAVIS,* JJ.

GRIBBS, P.J. After a bench trial defendant was found guilty of carrying a pistol in a motor vehicle, MCL 750.227; MSA 28.424, and sentenced to from 1 to 5 years imprisonment. He appeals his conviction as of right. The sole issue on appeal is whether the trial court erred in denying defendant's motion to suppress the gun as evidence on the basis of an illegal search and seizure. We are not left with a definite and firm conviction that the trial court erred in denying defendant's motion to suppress and affirm defendant's conviction.

At the hearing on defendant's motion to suppress, Herbert Schuller, a Highland Park police officer, testified that at approximately 2:45 p.m. on September 25, 1983, he was driving in his patrol car on McNichols east of Woodward when he spotted defendant driving a blue Ford in an erratic

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

manner. Officer Schuller briefly flicked on his car's lights and siren to signal the defendant to stop. At the intersection of John R and McNichols, the Ford turned onto John R and Schuller followed. The defendant proceeded approximately 30 to 35 feet and then turned into a parking lot and continued to advance for an additional 40 feet before coming to a stop. As the defendant turned the corner onto John R, Schuller saw him lean over to the glove compartment area "as if to hide something". Relying on his past experience as a police officer, Schuller interpreted the driver's failure to pull over immediately as a stalling technique. This, coupled with the defendant's leaning or reaching motion, caused Schuller to call for a backup car. Once stopped, defendant and Schuller got out of their respective cars and stood behind defendant's car. Schuller asked defendant for his license and defendant began searching his wallet. The driver's door was open at that time. Schuller proceeded to walk around to the passenger side of defendant's car, because he did not want to lean into the driver's side and lose sight of defendant. Schuller saw a closed shaving kit on the passenger seat. When defendant was unable to find his license, Schuller informed him that he was under arrest for operating a vehicle without a license. Schuller ordered defendant to place his hands on the trunk of the car while Schuller opened the unlatched passenger door and removed the shaving kit. Schuller felt the outline of a gun in the kit and, after opening it, he discovered a pistol. Defendant was then arrested for carrying a pistol in a vehicle.

Defendant testified on his own behalf. Defendant did not deny that he was carrying the weapon nor did he contest the validity of the traffic stop or the traffic-related arrest. Although much of his testi-

mony was essentially in accord with that of Schuller, it differed in some respects. According to defendant, he was unaware that he was being pursued by Schuller until he stopped at a red light on John R and McNichols. At that point, defendant immediately turned the corner and pulled into the first available driveway, which was only a few feet from the intersection. The pistol was in the shaving kit at all times and defendant denied that he ever made any attempt to hide it. Once he stopped his car, defendant immediately exited from the vehicle and locked the door behind him. He locked the door as a matter of habit, to prevent the officer from finding the gun, and as an attempt to render the search invalid. When defendant told Schuller that he did not have a license, Schuller responded that defendant was under arrest. Schuller then asked defendant for the keys to the vehicle but defendant refused to turn them over. According to defendant, Schuller then cuffed defendant, searched him and removed his keys and then went to defendant's car. Defendant later testified at the hearing that he was handcuffed and placed in Officer Schuller's vehicle when his car was searched.

The trial court found *New York v Belton,* 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981), *reh den* 453 US 950 (1981), controlling in the instant case. The court made no findings of fact with respect to the discrepancy between Officer Schuller's and defendant's stories, finding them irrelevant to the application of *Belton's* objective test permitting searches of passenger compartments of motor vehicles incident to lawful arrests. The court found that under *Belton* the search in the present case would be lawful as a search incident to a lawful arrest. It further found the interim bail statute cases such as *People v Dixon,* 392 Mich

691; 222 NW2d 749 (1974), inapplicable to searches incident to lawful arrests and denied defendant's motion to suppress the evidence.

Defendant first contends that the search of his vehicle violated Michigan law.[1] Presumably defendant is arguing that the search of the passenger seat and seizure of the gun in the shaving kit constituted an unconstitutional search and seizure under the Michigan Constitution. Const 1963, art 1, § 11. We point out that the Michigan Constitution does not impose a higher standard of reasonableness for searches and seizures than that imposed by the Fourth Amendment of the federal constitution, *People v Nash,* 418 Mich 196, 213, 225, 226; 341 NW2d 439 (1983), and apply the *Belton* analysis to determine whether the search and seizure of the gun violated either the state or federal constitutional prohibition against unreasonable searches and seizures. See *People v Alfafara,* 140 Mich App 551, 560-561; 364 NW2d 743 (1985).

We find that the search of the passenger area of defendant's vehicle and subsequent seizure of the gun outlined in the shaving kit falls within the scope of a permissible search under *Belton, supra.* Under *Belton,* when an officer has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment and examine the contents of any containers found therein. *Belton,* 453 US 459-460. Although searches incident to lawful custodial arrests such as those in *Belton* are permitted in order to insure the officer's safety, the United States Supreme Court in *Belton,* in order to establish a workable

---

[1] Defendant raises this as an issue separate from his claim that the search violated the Michigan interim bail statute, MCL 780.581; MSA 28.872(1), discussed *infra.*

rule in such recurring factual situations, articulated an objective test based on proximity in time and space of the search to the arrest, rather than a subjective test based on an appellate court's appraisal of the likelihood that defendant posed a danger to the officer. *People v Waddell,* 132 Mich App 171, 173; 347 NW2d 13 (1984); *People v Jackson,* 123 Mich App 423, 429; 332 NW2d 564 (1983), *lv den* 417 Mich 1100.35 (1983). Under the objective test of *Belton,* the search and subsequent seizure of the gun in the instant case was lawful. Since we find that the officer's search in the instant case was permissible under *Belton,* and Michigan constitutional guarantees against unreasonable search and seizure are not greater, and certainly no less, than those guaranteed by the Fourth Amendment of the United States Constitution, we find that the search of defendant's car and seizure of the gun incident to the lawful search did not violate either the federal or state constitution. See *Alfafara, supra.*

We now turn to defendant's next argument, that the pistol should be suppressed from admission into evidence because it was seized in violation of the interim bail statute, MCL 780.581; MSA 28.872(1). He argues that our Supreme Court's decision in *People v Dixon, supra,* requires suppression of the gun. In *Dixon,* defendant, arrested in the middle of the night for driving without a license, was subjected to an unfruitful search at the scene of the arrest. Defendant was transported to the police station but was not informed of his right under the interim bail statute to immediate release upon posting bail if no magistrate was available before whom he could be brought. A subsequent inventory search prior to defendant's incarceration uncovered several packets of heroin on his person. The Supreme Court found that the

inventory search at the station was in derogation of defendant's statutory right to be released upon posting bail, a right of which he was not informed prior to his incarceration and inventory search. The Court concluded that the evidence seized in violation of this statutory right must be suppressed. *Dixon,* p 705.

In the instant case, the search of defendant and the passenger compartment of his car was a search incident to a lawful arrest. It was not, as in *Dixon,* an inventory search at the police station. The legislative policy underlying the interim bail statute is the avoidance of the "unwarranted and unnecessary inconvenience, embarrassment and risk attendant incarceration for a minor traffic offense". *Dixon,* 392 Mich 705-706. In contrast, searches of passenger compartments incident to lawful arrests are permitted for the protection of the arresting officer.[2] Thus, we do not believe that *Dixon, supra,* applies to a situation, such as the one at bar, where a police officer, pursuant to a lawful custodial arrest, searches the arrestee and the passenger compartment of the arrestee's automobile and containers therein. In this regard we disagree with *People v Siegel,* 95 Mich App 594; 291 NW2d 134 (1980), *lv den* 414 Mich 900 (1982), *People v Cavitt,* 86 Mich App 59; 272 NW2d 196 (1978), *lv den* 406 Mich 945 (1979), and *People v Garcia,* 81 Mich App 260; 265 NW2d 115 (1978),

---

[2] Even though there may be some question of whether the officer in the instant case was in danger at the time of defendant's arrest, especially since defendant may have been handcuffed and in another vehicle, we again point out that the United States Supreme Court in *Belton, supra,* in order to establish a workable rule in these types of situations, did not focus on a subjective appraisal of what areas were in immediate control of the arrestee and were thus of potential danger to the arresting officers, but held that an officer may search the passenger compartment of an automobile and containers therein pursuant to a lawful custodial arrest. This is underscored by the fact that in *Belton* none of the occupants were within lunging distance of the vehicle searched.

and adopt the reasoning of the dissents in *Cavitt, supra,* and *Garcia, supra.*

Upon our review of the record we are not left with a definite and firm conviction that the trial court made a mistake in denying defendant's motion to suppress the evidence, *People v Burrell,* 417 Mich 439, 449; 339 NW2d 403 (1983), and must therefore affirm its ruling.

Affirmed.

HOOD, J., concurred.

A. T. DAVIS, J. *(concurring).* I concur with the decision in this case while expressing my disagreement with the majority opinion in *Belton, supra,* and indicating my approval of the dissenting opinion of Justice BRENNAN in that case.