## PEOPLE v BANDY

Docket No. 50375. Submitted February 3, 1981, at Detroit.—Decided April 9, 1981. Leave to appeal applied for.

Jerry E. Bandy was bound over for trial in Wayne Circuit Court on charges of possession of a blackjack and knowingly and intentionally possessing cocaine. Defendant moved to suppress the evidence seized at the time of his arrest and to quash the information against him. Defendant was arrested after an escapee from Isabella County Jail, considered to be armed and dangerous, placed a telephone call to an apartment. The police placed the apartment under surveillance, thinking that the escapee might go there. When defendant, who matched the general description of the escapee, emerged from the apartment, he was stopped by one of the police officers. A patdown search was conducted and the blackjack was found. Defendant was then arrested for carrying a concealed weapon. A full custodial search conducted after the arrest revealed that defendant had five vials of cocaine in his possession. The trial court ruled that the initial patdown search was unreasonable. Defendant's motion to suppress the evidence was granted and the information against defendant was quashed, Patrick J. Duggan, J. The people appeal. *Held:*

The standard of evaluation to be used in determining the reasonableness of a particular search or seizure is whether the facts available to the officer at the moment of the search or seizure would warrant the belief by a man of reasonable caution that the action taken was appropriate. This involves a dual inquiry: first, was the officer's action justified at its inception and, second, was the officer's action reasonably related in scope to the circumstances which justified the interference in the first place. In light of the circumstances of this case, it was

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 166.

[2, 3] 68 Am Jur 2d, Searches and Seizures § 2.

[4] 68 Am Jur 2d, Searches and Seizures § 40.

"Furtive" movement or gesture as justifying police search. 45 ALR 3d 581.

[5] 68 Am Jur 2d, Search and Seizure § 58.

not unreasonable for the officer to conduct a limited patdown search for weapons. There was no violation of defendant's Fourth Amendment right to be free of unreasonable searches and seizures.

Reversed and remanded.

1. APPEAL — SUPPRESSION OF EVIDENCE — CLEARLY ERRONEOUS RULINGS.

The Court of Appeals will not disturb a trial court's ruling on a motion to suppress unless such ruling is found to be clearly erroneous.

2. SEARCHES AND SEIZURES — REASONABLENESS OF SEARCH OR SEIZURE — OBJECTIVE STANDARD.

An objective standard of evaluation must be used in determining the reasonableness of a particular search or seizure in light of the particular circumstances; the test is whether the facts available to the officer at the moment of the search or the seizure would warrant the belief by a man of reasonable caution that the action taken was appropriate.

3. SEARCHES AND SEIZURES — REASONABLENESS OF SEARCH OR SEIZURE — DUAL INQUIRY.

There is a dual inquiry which must be made in determining the reasonableness of a particular search or seizure by a police officer: first, it must be determined whether the officer's action was justified at its inception, and, then, whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

4. SEARCHES AND SEIZURES — ARREST — PROBABLE CAUSE — FURTIVE GESTURES.

The law requires more than a mere furtive gesture to constitute probable cause to search or to arrest.

5. SEARCHES AND SEIZURES — SEARCH FOR WEAPONS — REASONABLENESS OF SEARCH — LACK OF PROBABLE CAUSE.

There must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of police officers where there is reason to believe that an armed and dangerous individual is being dealt with, regardless of whether there is probable cause to arrest the individual for a crime; the officers need not be absolutely certain that the individual is armed, the issue being whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *A. George Best, II,* Assistant Prosecuting Attorney, for the people.

*Thomas M. Costello, Jr.,* for defendant on appeal.

Before: BRONSON, P.J., and M. F. CAVANAGH and N. J. KAUFMAN, JJ.

M. F. CAVANAGH, J. Defendant was bound over for trial for possession of a blackjack, MCL 750.224; MSA 28.421, and knowingly and intentionally possessing cocaine, MCL 333.7403; MSA 14.15(7403). Defendant's motion to suppress the evidence seized at the time of his arrest was granted and the information against the defendant was quashed. This decision by the court is appealed by the prosecutor as of right.

The charges against the defendant arose out of incidents which occurred on October 9, 1979. The Michigan State Police had received information from the Mt. Pleasant Police Department that an inmate at the Isabella County Jail had produced an automatic pistol in the jail, overpowered a guard and escaped. The escapee had proceeded to a location in Mt. Pleasant from which he made three telephone calls to the Detroit area. The escapee then kidnapped a Mt. Pleasant citizen and forced the citizen to drive him to the Novi exit of I-696. Then the escapee fled on foot. One of the phone calls made by the escapee was traced to a telephone number listed to a Cheryl Nichols at 18591 Innsbrook, Northville.

The escapee was described as being approximately 25 years old, white, male, 5 feet 10 inches

tall, 165 pounds, brown hair and green eyes and was believed to be armed and dangerous. Michigan State Police Sergeant Lee Koontz was stationed outside the Innsbrook apartment looking for the escapee. At 8:30 p.m., Sergeant Koontz observed the defendant exit from the front door of the apartment which he was watching. The defendant was described as a white male, with brown, curly hair, 5 feet 10 inches tall, 165 pounds, and approximately 35 years old. It was dark, but the area did have some lighting. The defendant walked from the apartment and towards the parking lot. When the defendant reached the courtyard area of the apartments, he noticed Sergeant Koontz, who was dressed casually, and looked over his shoulder several times in a nervous manner. The officer followed the defendant on foot to the parking lot where the defendant entered a vehicle. The officer then approached the defendant, identified himself as a police officer, and ordered the defendant out of the car. The defendant immediately exited from the car and Sergeant Koontz frisked him. At that time, a blackjack was found in the defendant's left rear pants pocket. The defendant was then placed under arrest for carrying a concealed weapon.

Immediately after the arrest, Sergeant Fulgham, who had also been in the area to observe the apartment, arrived on the scene. Sergeant Fulgham was familiar with the escapee because he had had numerous contacts with him. A full custodial search of the defendant revealed five small vials of a white powdery substance which was later identified as cocaine.

The charges against the defendant were dismissed by the trial judge based on a finding that the circumstance surrounding the search of the defendant did not fall within the *Terry v Ohio, 392*

US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), stop and frisk rule. The court found that the defendant's "looking over his shoulder several times at [Officer Koontz] in a nervous manner" did not rise to the level of suspicious activity that existed in *Terry* and would not, in and of itself, lead a reasonable police officer to conclude that criminal activity may be afoot. The court concluded that whether or not the search was justified under *Terry* depends on whether or not the police officer had reason to believe that the defendant was, in fact, the escapee. In ruling that the search was not justified, the court noted that it would not have been unreasonable to assume that the police could have expected a person other than the escapee matching the escapee's general description to exit from the apartment. The court also found it significant that the police had no definite information that the escapee was at the apartment, but only that it was possible that he might be. The court noted that Sergeant Fulgham was personally familiar with the escapee and stated that, since nothing about the defendant's behavior would have led Officer Koontz to believe that he was the escapee, it would not have been an unreasonable burden for Officer Koontz to ask for the defendant's driver's license or to confer with Sergeant Fulgham and possibly run a check on the vehicle.

A trial court's ruling on a motion to suppress will not be disturbed on appeal unless this Court finds such ruling to be clearly erroneous. *People v Carter,* 96 Mich App 694; 293 NW2d 681 (1980), *People v Young,* 89 Mich App 753, 763; 282 NW2d 211, *lv den* 407 Mich 877 (1979), *cert den* 445 US 927 (1980).

The United States Supreme Court in *Terry v Ohio, supra,* has mandated that an objective stan-

dard of evaluation be used in determining the "reasonableness of a particular search or seizure in light of the particular circumstances * * *: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (Citations omitted.) We are faced with a dual inquiry as to whether the seizure and search were "reasonable". First, it must be determined whether the officer's action was justified at its inception, and, then, whether it was reasonably related in scope to the circumstances which justified the interference in the first place. This Court in *People v Young, supra,* stated that: "* * * a mere furtive gesture, standing alone, does not create probable cause to search a vehicle". (Citations omitted.) Gestures, like words, are easily inaccurately interpreted. The *Young* Court followed the reasoning of *People v Hall,* 40 Mich App 329, 335; 198 NW2d 762 (1972):

" 'The difficulty is that from the viewpoint of the *observer,* an innocent gesture can often be mistaken for a guilty movement. He must not only perceive the gesture accurately, he must also interpret it in accordance with the actor's true intent. But if words are not infrequently ambiguous, gestures are even more so. Many are wholly nonspecific, and can be assigned a meaning only in their context. Yet the observer may view that context quite otherwise from the actor: not only is his vantage point different, he may even have approached the scene with a preconceived notion—consciously or subconsciously—of what gestures he expected to see and what he expected them to mean. The potential for misunderstanding in such a situation is obvious.

" *'It is because of this danger that the law requires more than a mere "furtive gesture" to constitute probable cause to search or to arrest.'* "

Following the reasoning of *People v Young* and *People v Hall,* we agree with the trial court that the defendant's gestures of looking over his shoulder at Officer Koontz standing alone would not be sufficient to justify the patdown search of the defendant. However, in light of the circumstances in which the officer found himself, it was not unreasonable for him to conduct a limited patdown search for weapons. The Supreme Court in *Terry* recognized the need for police officers to protect themselves and others in situations where there was no probable cause to arrest.

"Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Cf. Beck v Ohio,* 379 US 89, 91 [13 L Ed 2d 142, 145; 85 S Ct 223] (1964); *Brinegar v United States,* 338 US 160, 174-176 [93 L Ed 1879, 1889-1891; 69 S Ct 1302] (1949); *Stacey v Emery,* 97 US 642, 645 [24 L Ed 1035, 1036] (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. *Cf. Brinegar v United States, supra.*" *Terry, supra,* 27.

Although the defendant in the present case did not act in a suspicious manner which would alone justify the stop and frisk, the totality of circum-

stances would indicate the reasonableness of the officer's action. An escapee from jail was known to have kidnapped a citizen while armed. Information had been received that would make it reasonable to believe that the escapee was present in this apartment. The defendant was very similar in description to the escapee. Officer Koontz observed the defendant exiting not from a common doorway or hallway of the apartment building, but from the front door of the apartment suspected of being the repose of the escapee. Although it may have been possible for Sergeant Fulgham, who was familiar with the escapee, to have indicated that the defendant was not the escapee, it was not unreasonable for Officer Koontz to assure himself that the person whom he was confronting was not armed.

"A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v Williams,* 407 US 143, 146; 92 S Ct 1921; 32 L Ed 2d 612 (1972).

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response." *Adams v Williams, supra,* 145. See, also, *People v Bloyd,* 96 Mich App 264, 267; 292 NW2d 546 (1980).

All the circumstances of this case point to the fact that the officer's action was justified at inception. The officer was acting on information that the escapee was armed with an automatic pistol, had overpowered a guard to effectuate his escape from jail, and had kidnapped a Mt. Pleasant citi-

zen. This information would justify the officer in believing that the escapee was "armed and presently dangerous". The presence of an individual of very similar description to the armed escapee at a location which the escapee was known to have recently contacted justified the officer's use of a patdown search for weapons.

"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry v Ohio, supra,* 24.

Therefore, as to the *Terry* dual inquiry, we find that the officer's action was justified at its inception and that the limited patdown search which led to the discovery of the blackjack was reasonably related in scope to the circumstances which justified the interference in the first place. There was no violation of the defendant's Fourth Amendment right to be free of unreasonable searches and seizures. We reverse the trial court's dismissal of the charges against the defendant.

Reversed and remanded.