PEOPLE v JACKSON

Docket No. 63223. Submitted December 13, 1982, at Detroit.—Decided February 24, 1983. Leave to appeal applied for.

Karl Jackson was charged with carrying a concealed weapon. Defendant moved in Recorder's Court of Detroit to suppress admission of the pistol which formed the basis of the charge on the basis that it had been obtained through an illegal search and seizure. Justin C. Ravitz, J., granted defendant's motion to suppress and dismissed the case. The prosecutor appeals by leave granted. *Held:*

The police properly searched the canvas handbag which defendant was carrying at the time of defendant's lawful arrest for offering to engage the services of a female for the purposes of prostitution. The handbag was within the area of defendant's immediate control and the officer, upon noting that the handbag was unusually heavy and feeling the shape of a gun within the handbag, had a right to search the handbag without a warrant in order to insure his own safety.

Reversed and remanded.

N. J. KAUFMAN, J., dissented. He would hold that since the handbag was in the possession of the police and the defendant was handcuffed, there were no "exigent circumstances" justifying the search of the handbag without a warrant. He would affirm.

OPINION OF THE COURT

1. APPEAL — SUPPRESSION OF EVIDENCE — CLEARLY ERRONEOUS RULINGS.

The Court of Appeals will not disturb a trial court's ruling on a

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 268.

5 Am Jur 2d, Appeal and Error § 738.

[2, 3] 68 Am Jur 2d, Searches and Seizures §§ 37, 92, 93.

Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of arrest and search. 19 ALR3d 727.

[4] 68 Am Jur 2d, Searches and Seizures §§ 5, 6.

[5] 68 Am Jur 2d, Searches and Seizures § 44.

motion to suppress unless such ruling is found to be clearly erroneous.

2. SEARCHES AND SEIZURES — SEARCH PURSUANT TO ARREST — WEAPONS.

A police officer, pursuant to a lawful arrest, may search the person arrested or the area within the person's immediate control for weapons or other things which might be used to assault the officer or effect an escape or for the purpose of securing evidence which the person arrested might otherwise destroy; the area within the arrested person's control is the area from which such person might gain possession of a weapon or destructible evidence.

3. SEARCHES AND SEIZURES — SEARCH PURSUANT TO ARREST — WEAPONS.

A police officer, pursuant to a lawful arrest for a misdemeanor, may search the handbag carried by the person arrested where the handbag is unusually heavy and the shape of a handgun inside the bag is felt; it is clearly erroneous to suppress the admission of the handgun found in the handbag under such circumstances, since the police officer had the right to search the area under the arrested person's control for weapons to insure the officer's safety.

4. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — MICHIGAN CONSTITUTION — FIREARMS.

The Michigan Constitution specifically does not bar from evidence any firearm seized by a police officer outside the curtilage of any dwelling house; accordingly, the Michigan Constitution cannot be said to provide greater protection with respect to searches and seizures of firearms than are provided by the federal constitution (Const 1963, art 1, § 11).

DISSENT BY N. J. KAUFMAN, J.

5. SEARCHES AND SEIZURES — EXIGENT CIRCUMSTANCES — SEARCH PURSUANT TO ARREST — WEAPONS.

*There are no "exigent circumstances" permitting a search without a warrant of a handbag carried by one who is lawfully arrested where the handbag has been removed from possession of the arrested person, the person arrested has been handcuffed, and the crime for which the person is arrested is such that there is no possibility that evidence might be destroyed, since the handcuffing and removal of the handbag from the possession of the arrested person eliminates any danger to the*

*officers making the arrest; under such circumstances, a search
without a warrant is per se unreasonable.*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Andrea L. Solak,*
Assistant Prosecuting Attorney, for the people.

*Mark R. Hall,* for defendant.

Before: Cynar, P.J., and N. J. Kaufman and
MacKenzie, JJ.

MacKenzie, J. Defendant was charged with carrying a concealed pistol, MCL 750.227; MSA
28.424. A pretrial motion by defendant to suppress
the pistol, obtained through an illegal search and
seizure, was granted and the case was dismissed.
This Court granted the prosecution's application
for delayed appeal.

This Court will reverse a trial court ruling on a
motion to suppress evidence only if the ruling was
clearly erroneous. See, for example, *People v
Bandy,* 105 Mich App 240, 244; 306 NW2d 465
(1981). Here it was not disputed that defendant
was lawfully arrested by police officers for the
misdemeanor of offering to engage the services of a
female person for the purposes of prostitution,
MCL 750.449a; MSA 28.704(1). At the time of his
arrest, defendant was carrying a canvas handbag.
The arresting officer testified that he took the
handbag from defendant, noted that it was unusually heavy, felt the shape of a gun inside, and then
opened the bag and discovered the gun. The officer
then handcuffed defendant and frisked him.

When a person is arrested, it is reasonable for
the arrested officer to search the person arrested

or the area within his immediate control to secure weapons or other things which might be used to assault the officer or effect an escape and to secure evidence of the crime which the person arrested might otherwise destroy. *Chimel v California,* 395 US 752, 763-764; 89 S Ct 2034; 23 L Ed 2d 685 (1969). In this context, the area within the arrestee's immediate control is the area from which the arrestee might gain possession of a weapon or destructible evidence. 395 US 763. In *United States v Robinson,* 414 US 218, 235; 94 S Ct 467; 38 L Ed 2d 427 (1973), the Court explained:

"A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

Defendant and the trial court relied upon *United States v Chadwick,* 433 US 1; 97 S Ct 2476; 53 L Ed 2d 538 (1977), and *Arkansas v Sanders,* 442 US 753; 99 S Ct 2586; 61 L Ed 2d 235 (1979). In *Chadwick,* defendants were arrested when a

trained police dog indicated that a footlocker which defendants had transported across the country on a train and then reclaimed contained controlled substances. The Court declined to create an exception for luggage searches which was analogous to the exception for automobile searches. The Court noted that, while luggage, like an automobile, is highly mobile, a greater expectation of privacy exists for the contents of luggage than for the contents of an automobile. The Court emphasized that the search in *Chadwick* could not be justified as incidental to the arrest, because it took place more than an hour after federal agents gained exclusive control of the footlocker and long after defendants were securely in custody. In *Sanders,* the Court reiterated its previous holding in *Chadwick.* The Court noted that the state had not attempted to justify the search as being incidental to a lawful arrest and pointed out that the searched luggage had been in the trunk of the automobile in which defendant was riding and so was not within defendant's immediate control. *Sanders,* p 763, fn 11.

In *New York v Belton,* 453 US 454, 459-460; 101 S Ct 2860; 69 L Ed 2d 768 (1981), the Court held:

"When a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority. While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger com-

partment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' *Chimel,* 395 US 763. In order to establish the workable rule this category of cases requires, we read *Chimel's* definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers in it be within his reach." (Footnotes omitted.)

The *Belton* Court emphasized that neither *Chadwick* nor *Sanders* involved a search incidental to a lawful arrest. In view of *Belton,* reliance on *Chadwick* and *Sanders* by defendant and the trial court was misplaced. Defendant contends that his handbag passed beyond his immediate control when the arresting officers took it from him. Defendant emphasizes that he was outnumbered by the officers present and was handcuffed shortly after the handbag was taken. However, in *Belton,* defendant had been removed from the automobile, yet controlled substances found zipped into a pocket of a jacket which defendant had left in the passenger compartment of the automobile were properly seized. See 453 US 461, fn 5. The handbag here was as much within defendant's immediate control as the jacket in *Belton* was within the immediate control of the defendant in that case.

Moreover, both *Robinson* and *Belton* emphasized the need for a simple rule which could be readily applied by a police officer confronted in the field

with an immediate problem. Here defendant reasons that it would be unlikely that he would be able to grab the handbag back from two police officers and seize the gun, particularly since he was handcuffed shortly after the handbag was taken by the officers. We cannot adopt defendant's reasoning if we adhere to the requirement of a simple, workable rule stated in *Robinson* and *Belton.* Defendant would have us determine, on a case-by-case basis, whether precautions taken by officers to ensure their safety were reasonable in light of the arrestee's privacy interests. *Belton* mandates an objective test based on proximity in time and space of the search to the arrest, rather than a subjective test based on an appellate court's appraisal of the likelihood that defendant posed a danger to the officers. In view of *Belton,* the trial court's decision to grant defendant's motion to suppress was clearly erroneous.

Defendant also argues that the Michigan Constitution provides greater protection than the federal constitution in the area of searches and seizures and that the trial court's decision should be sustained as a matter of state constitutional law. However, the state guaranty of security from unreasonable searches and seizures is contained in Const 1963, art 1, § 11, which states:

"The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state."

This provision is, of course, ineffective to prevent application of a federal exclusionary rule. *People v Pennington,* 383 Mich 611; 178 NW2d 471 (1970). However, the provision prevents formulation of a

state exclusionary rule applicable to the facts of this case.

Finally, we note that the trial court's decision may not be upheld under the rule stated in *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974). In that case, the Court held that, where a defendant had been arrested for a misdemeanor, evidence seized in an inventory search at the police station should have been suppressed because an inventory search was unreasonable in view of defendant's statutory right to immediate bail. However, the Court emphasized that its reasoning would not apply to a search incident to a lawful arrest. 392 Mich 706-707.

Reversed and remanded for further proceedings consistent with this opinion.

CYNAR, P.J., concurred.

N. J. KAUFMAN, J. *(dissenting).* I dissent because the trial court's decision was not clearly erroneous. The police officer was not in danger.[1] He had arrested the defendant and taken him away from the car. Thus, although the officer had to remove the canvas sack from the defendant's grip to handcuff him, removing the sack alone eliminated the danger. There was also no chance that evidence of the crime would be destroyed.[2] The defendant was arrested for soliciting; there was no physical evidence capable of destruction. The "exigent circumstances" exceptions to a search without a warrant are factually unsupported. When the officer felt the outline of the gun in the sack, he should have gotten a search warrant on this strong probable cause. But without the warrant, and absent exi-

---

[1] *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969).

[2] *Chimel v California, supra.*

gent circumstances, this search was per se unreasonable.

The majority is correct that some cases, notably the car and container search cases, would uphold an admission of evidence resting on this search.[3] Those cases, though, stretch the need for an immediate search too far and were decided over vigorous dissents. I believe the dissenting view, as expressed by Justice Brennan in *New York v Belton,* 453 US 454, 463; 101 S Ct 2860; 69 L Ed 2d 768 (1981), is true to the purpose of the "exigent circumstances" exception. A substantial legal foundation exists for this view, and a trial judge should be permitted to follow the rule as interpreted by the "dissenting" view. Following this view is not clearly erroneous and goes further to protect the defendant's delicate rights. I would therefore affirm the suppression order and consequent dismissal of the weapons charge.

[3] *E.g., New York v Belton,* 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981) (jacket in car). But see *United States v Chadwick,* 433 US 1; 97 S Ct 2476; 53 L Ed 2d 538 (1977).