PEOPLE v RUSSELL

Docket No. 84754. Submitted December 4, 1985, at Detroit. Decided March 19, 1986.

Following a preliminary examination, defendant, Robert A. Russell, was bound over to the Recorder's Court for the City of Detroit on a charge of possession of heroin, fifty grams or less. Defendant moved to suppress certain evidence and dismiss the information. The trial court, Michael F. Sapala, J., granted the motion. The people appeal. *Held:*

1. The facts indicate that the police were justified in attempting a stop of the defendant. The trial court clearly erred in reaching a contrary conclusion.

2. Under the circumstances here presented, it is clear that Officer Kean's observation of the defendant holding the coin envelopes provided him with a reasonable belief that criminal activity was afoot. Officer Kean's observation of defendant holding and then dropping the envelopes, his experience and knowledge that coin envelopes often contained narcotics, his personal observation of narcotics activities on that corner earlier that day, and citizen complaints of heavy drug trafficking on that corner were facts clearly sufficient to support a finding that the attempted stop was legal.

Reversed and remanded.

SHEPHERD, J., concurred. He noted that, since the facts indicate an abandonment of the coin envelopes before defendant's freedom of movement was impaired, there was no taking of the

REFERENCES

Am Jur 2d, Appeal and Error §§ 166, 737 *et seq.,* 820.

Am Jur 2d, Evidence §§ 410 *et seq.*

Am Jur 2d, Searches and Seizures §§ 9, 41 *et seq.,* 120 *et seq.*

Odor of narcotics as providing probable cause for warrantless search. 5 ALR4th 681.

Validity and construction of statute creating presumption or inference of intent to sell from possession of specified quantity of illegal drugs. 60 ALR3d 1128.

Search and seizure: "furtive" movement or gesture as justifying police search. 45 ALR3d 581.

Admissibility, in criminal case, of evidence obtained by search by private individual. 36 ALR3d 553.

property from the defendant and, therefore, there was no search or seizure. He also noted that there was no stop prior to defendant's flight that needs to be evaluated as being proper or improper.

### Opinion of the Court

1. Appeal — Suppression of Evidence.

Appellate review of grants or denials of motions to suppress evidence is made on the clearly erroneous standard of review; a finding is clearly erroneous where, although there is evidence to support it, the reviewing court is firmly convinced that a mistake has been made.

2. Criminal Law — Investigatory Stops — Searches and Seizures.

An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity; where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot, evidence seized as the result of a limited search may be properly introduced against the person from whom it was taken.

3. Controlled Substances — Coin Envelopes.

The Court of Appeals has recognized the fact that coin envelopes are commonly used as containers for controlled substances by drug traffickers.

### Concurrence by Shepherd, J.

4. Criminal Law — Evidence — Searches and Seizures — Abandoned Property.

*There was no taking of property from the defendant and therefore no search or seizure of which the defendant can complain where the testimony shows that the defendant decided to abandon the property after a person in plain clothes identified himself as a police officer and before the defendant's freedom of movement was impaired.*

5. Criminal Law — Evidence — Searches and Seizures — Stops.

*There was no "stop" of the defendant prior to the defendant's flight from a police officer where the facts indicate that the officer did not order or request the defendant to stop but merely identified himself as an officer.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prose-

cuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Andrea L. Solak,* Principal Attorney, Appeals, for the people.

*Defenders' Office—Legal Aid and Defender Association of Detroit* (by *Donald L. Johnson*), for defendant on appeal.

Before: MACKENZIE, P.J., and D. F. WALSH and SHEPHERD, JJ.

PER CURIAM. Following a preliminary examination, defendant was bound over to Recorder's Court for trial on a charge of possession of heroin, fifty grams or less, MCL 333.7403(2)(a)(iv); MSA 14.15(7403)(2)(a)(iv). The people appeal as of right from an order by Recorder's Court Judge Michael F. Sapala granting defendant's motion to suppress certain evidence and dismiss the information. We reverse and remand.

The only testimony given at an evidentiary hearing on defendant's motion was by Police Officer James Kean. He indicated that on November 14, 1984, Officer Kean, Officer Matuzack, and Officer Denardo were sent to the area of Van Court and Tireman in the City of Detroit in response to a complaint of dope trafficking. The officers were in plain clothes and driving an unmarked car. After observing people on the corner of Van Court and Tireman, the officers parked their car. Officer Kean had observed narcotics activity several times earlier that day on the same corner. When Officer Kean rounded the corner, he observed defendant, who was ten feet away, holding several pink coin envelopes. When Kean yelled "police," defendant dropped several pink coin envelopes and fled. Officer Kean pursued and eventually apprehended the defendant. Officer Kean testified that he believed

that the pink coin envelopes the defendant dropped contained heroin. When asked how many times he had seen heroin packaged in this manner, he replied, "hundreds." Subsequent examination of the packets revealed that they indeed contained heroin.

Based upon the above testimony (which the judge found to be "absolutely credible"), and relying primarily on *People v Terrell,* 77 Mich App 676; 259 NW2d 187 (1977), the court ruled that the narcotics evidence was inadmissible as the product of illegal police conduct and accordingly ordered the evidence suppressed and the case dismissed.

Appellate review of grants or denials of motions to suppress evidence is made using the "clearly erroneous" standard. *People v Burrell,* 417 Mich 439; 339 NW2d 403 (1983); *People v Jackson,* 123 Mich App 423; 332 NW2d 564 (1983). A finding is clearly erroneous where, although there is evidence to support it, the reviewing court is firmly convinced that a mistake has been made. *People v Goss,* 89 Mich App 598; 280 NW2d 608 (1979). The narrow issue presented in this case is whether under these circumstances the police were justified in attempting a stop of defendant. If the answer is in the negative, then the narcotics evidence was properly held inadmissible under the fruit of the poisonous tree doctrine. *People v Shabaz,* 424 Mich 42; 378 NW2d 451 (1985). If, on the other hand, the answer is in the affirmative, then no unreasonable police conduct occurred, and the court's ruling must be reversed. We find that on these facts the police were justified in attempting to stop defendant, and that the trial court clearly erred in reaching a contrary conclusion.

An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.

*Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Thus, "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," 392 US 30, evidence seized as the result of a limited search may be properly introduced against the person from whom it was taken. Under the circumstances here presented, it is clear that Officer Kean's observation of defendant holding the coin envelopes provided him with a reasonable belief that criminal activity was afoot.

In *Wayne Co Prosecutor v Recorder's Court Judge,* 100 Mich App 518; 299 NW2d 63 (1980), a police officer was allowed to enter a motel room, where he observed a plastic bag containing coin envelopes on a bed. No other suspicious activity was observed. The officer seized the envelopes, which contained heroin. The defendant's motion to suppress the evidence was granted below. A majority of this Court reversed, stating:

> [W]e believe the point on which this case turns is the testimony of the arresting officer, who stated that he had encountered coin envelopes of the type seized here 800 or 900 times in the same general area during his experience as a police officer and that such envelopes usually contained heroin. Based on this testimony, which is additionally supported by a countless number of cases yearly confronting both the trial and appellate bench, it is or should be clear by now that coin envelopes of the sort seized from the defendant are not simply innocuous, folded pieces of paper. [100 Mich App 519-520.]

Similarly, in *People v Ridgeway,* 74 Mich App 306, 314; 253 NW2d 743 (1977), lv den 401 Mich 831 (1977), this Court concluded that an arresting

officer had probable cause to believe that a tinfoil packet observed on the defendant's car floor contained a controlled substance. In support of this position, the *Ridgeway* panel stated that the strongest support for a finding of probable cause was the arresting officer's knowledge that tinfoil packages like the one discovered on the defendant's car floor often contained narcotics.

In *Wayne Co Prosecutor v Recorder's Court Judge,* 101 Mich App 772, 777-778; 300 NW2d 516 (1980), this Court again recognized that coin envelopes are commonly used in drug trafficking. We stated:

> We find that the arresting officer's observations of the two defendants, his duties as a narcotics officer, his experience and knowledge of the common use of coin envelopes in drug trafficking, his personal observation of the actual delivery and exchange of currency, and the fact that this incident occurred in an area known for its high narcotics activity, were clearly sufficient to support a finding of probable cause. Thus the examining magistrate abused her discretion in failing to bind defendants over as charged.

*People v Terrell, supra,* upon which the trial court relied, is distinguishable from the instant case. In *Terrell,* the only facts which could provide the police with a reasonable belief that criminal activity may have been afoot was the fact that defendant reached into his pocket and fled after observing the police. In this case, in contrast, the officer had far more than a mere furtive gesture upon which to base his suspicion of criminal activity, as the above-cited cases demonstrate. Officer Kean testified that he believed that the pink coin envelopes defendant held contained heroin because

he had seen heroin packaged in this manner "hundreds" of times before. Officer Kean's observation of defendant holding and then dropping the envelopes, his experience and knowledge that coin envelopes often contained narcotics, his personal observation of narcotics activities on that corner earlier that day, and citizen complaints of heavy drug trafficking on that corner were clearly sufficient to support a finding that the attempted stop was legal.

Reversed and remanded.

SHEPHERD, J. *(concurring)*. There is an additional reason for reversing the trial court. The testimony shows that all the police officer did was shout "police" after which the defendant immediately dropped the coin envelopes. This is an abandonment of the property after a person in plain clothes identified himself as a police officer. There was no taking of the property from the defendant and therefore there was no search or seizure.

It also appears that there was no "stop" prior to defendant's flight that needs to be evaluated as being proper or improper. The officer did not order or request defendant to stop; he merely identified himself as an officer. The defendant was free to stay where he was or leave; his choosing to drop the envelopes was his own decision. If the stop had come before the envelopes were dropped, we would be called upon to determine whether the dropping of the envelopes was in response to an illegal stop. Since the envelopes were dropped before defendant's freedom of movement was impaired, we can characterize his activity as an abandonment and need not determine whether the seizure was a legitimate consequence of a *Terry*[1] stop.

---

[1] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).